[Crim. No. 4931.   First Dist., Div. Three.   Mar. 15, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM
WATSO, Defendant and Appellant.

774

William E. Ferriter and John M. Quinn for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and John F. Kraetzer, Deputy Attorney General, for Plaintiff and Respondent.

DRAPER, P. J.—A jury found appellant and four others guilty of conspiracy (Pen. Code, § 182) to commit petty theft (Pen Code, §§ 484, 488). As to each, the crime was determined to be a misdemeanor. All were admitted to probation, Watso for three years on condition that he serve 60 days in county jail and make restitution of $798. Only he appeals.

The essence of the charged conspiracy was the return to the San Francisco Examiner, for credit, of unsold papers for which credit was not allowable. Appellant and four other defendants were "street men" or "wholesalers"—drivers who delivered papers to individual vendors and stocked sidewalk racks from which passers-by bought papers on a self-serve basis. They were charged at the rate of 7½ cents per copy for such papers. Credit in like amounts was allowed for unsold copies returned. Defendant Hartman was an "over-the-road" driver who delivered papers to distribution points as distant as Sacramento. Papers delivered by him could not be returned for credit, since the rate charged the out of town distributors was lower to accommodate for losses and unsold copies. Except in unusual circumstances, such drivers were not permitted to carry papers in their trucks returning to San Francisco. Hartman, nonetheless, did return such papers, transferring them from the company truck to his own automobile before leaving the truck at the company garage. A number of such copies were marked with fluorescent crayon, and were later returned by the other defendants, including appellant, who received credit of 7½ cents per copy therefor. The publisher, having already credited the distant distributors for these copies by reducing the rate charged them, thus was mulcted of the 7½ cents per copy credited to defendant street men. There was evidence that gifts of money and liquor were made to Hartman by the other defendants.

The marked copies returned by appellant established that he sought and received credits to which he was not entitled, and doubtless account for his failure to urge insufficiency of the evidence.

The prosecution, however, offered some evidence of a rule requiring that returns by street men be made within three days to be entitled to credit. On cross-examination, it was shown that this rule had not been published to the driver employees generally. Defendants' knowledge of the rule could be inferred, however, from evidence that old issues returned by them were sandwiched inside bundles of returned papers. The "rule" was used largely as the basis for testimony of an accountant estimating the total loss to the newspaper. The charge, however, was conspiracy to commit petty theft, and the total taken is of little significance.

Nonetheless, defense counsel made much of the weakness of the three-day rule testimony. He argued strongly a number of other points, but did, at one point, suggest that the three-day rule was the issue.

In its instructions, the court referred to its authority to comment upon the evidence, and then said: "It has been stated that the issue in this case is whether the Defendants here had the right to return papers over three days of age and obtain credit due them upon the books of the Examiner. 'Was there a rule of the Examiner prior to July 7th prohibiting such conduct?'

"That does not state the substantial issue in this case.

"The issue for you to determine is whether or not the Defendants . . . conspired together to commit the crime of petty theft and thereafter committed overt acts. One of the principal questions in considering this issue is this: were the wholesale defendants . . . to their knowledge, authorized to return for credit of 7½ cents per paper only papers which were previously issued to them and charged against them by the Examiner? If so, the evidence would seem to indicate the guilt of the Defendants.

"On the other hand, were they authorized to return for such credit papers which were not previously issued to and charged against them? If this was the case, the evidence would seem to indicate that the Defendants are not guilty." The judge followed with full instructions that his comments were to be considered only as an aid, and in no way restricted the full power and authority of the jury to determine the facts.

Appellant asserts error in this comment. But on the indictment, the evidence, and the argument of counsel, it is clear that the instruction was correct. The "substantial issue" clearly was whether the defendants conspired to commit

petty theft. The trial judge also was correct in stating that "one of the principal questions" was the right of defendant street men to return for credit papers which had not been charged against them. His comment did not, argumentatively or otherwise, attack defense counsel's argument. It did not negate counsel's claim that the three-day rule was an issue. It did place that question in its proper perspective as but one of the questions involved.

Appellant argues that the comment might negate his right to return papers charged to earlier drivers on his route, or to substitutes who worked on his days off. But in the context of the evidence and argument no such connotation could have been conveyed.

■ Appellant's real argument is that the court can comment only upon "the evidence and the testimony and credibility of any witness" (Cal. Const., art. VI, § 19), and cannot speak of "the issues of the case." We cannot accept this narrow view. Comment upon the items specified in the section would be but barren and sterile unless it be related to "the issues of the case." It is established that the court is not restricted to a summary of all the evidence, favorable or unfavorable, but may limit its comment to particular items or witnesses (*People* v. *Friend,* 50 Cal.2d 570, 578 [327 P.2d 97]). Comment so limited at least impliedly defines the issues. Language of other decisions indicates that a major purpose of comment by the court is to clarify the issues (*People* v. *Calkins,* 8 Cal.App.2d 251, 254 [47 P.2d 544]; *People* v. *Harris,* 87 Cal.App.2d 818, 826-827 [198 P.2d 60]).

Appellant also argues that the court coerced the jury when that body suggested inability to reach a verdict after extended deliberation. We have reviewed the court's statements in detail, and find no error. (*People* v. *Beaugez,* 232 Cal.App.2d 650, 658-660 [43 Cal.Rptr. 28]; *People* v. *Minkowski,* 204 Cal. App.2d 832, 851-853 [23 Cal.Rptr. 92]; *People* v. *Boyden,* 181 Cal.App.2d 48, 52-54 [4 Cal.Rptr. 869].)

■ Appellant also argues that the order for restitution is unreasonable. But the court may order restitution as a condition to probation (*In re Trombley,* 31 Cal.2d 801, 811-812 [193 P.2d 734]). In doing so, it may consider the probation officer's report (*People* v. *Marin,* 147 Cal.App.2d 625 [305 P.2d 659]). Moreover, evidence received at trial afforded some basis for fixing the amount. The restitution ordered was but half that recommended by the probation officer. We cannot find it unreasonable.

Appeal from order denying new trial dismissed. The judgment and the order granting probation are affirmed.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied April 14, 1966, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1966.