[No. G002953. Fourth Dist., Div. Three. Oct. 8, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
PETER JESS OJEDA, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Keith I. Motley and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Appellant.

G. David Haigh for Defendant and Appellant.

## OPINION

**SONENSHINE, J.**—Peter Ojeda sought release from custody alleging he had been denied due process because the Board of Prison Terms refused to appoint counsel to represent him at his formal parole revocation hearing. The trial court found counsel must be appointed in all cases without regard to the particular facts of each case and ordered Ojeda be given a new hearing before the parole board. The People appeal from the partial granting of a petition for habeas corpus.

Ojeda cross-appeals from the court's denial of his request to be released forthwith. He claims he has served the maximum term.

I

On July 31, 1981, Ojeda, after a plea of guilty, was sentenced to state prison for two years. While on parole, he was arrested. A large quantity of high grade heroin was seized inside a radio in the bedroom where Ojeda and his girlfriend were found. His parole agent placed a hold on him and a formal revocation hearing was held on April 16, 1985.

There were three allegations which formed the basis of revocation: (1) absconding from supervision; (2) possession of heroin for sale; and (3) using heroin. Ojeda requested an attorney and completed the appropriate Board of Prison Terms form. His request was denied based upon three criteria: (1) the circumstances were not aggravated; (2) the parolee had the ability to effectively represent himself; and (3) the case was not complex.

Ojeda filed a writ of habeas corpus. The trial court granted Ojeda a new revocation hearing to be held with counsel and denied his request for immediate release. The ruling on that writ is the subject of the People's appeal.

II

■ The right to appeal is specifically limited by Penal Code section 1506: no appeal lies by a defendant from an order denying a writ of habeas corpus. (*People* v. *Ryan* (1953) 118 Cal.App.2d 144, 149 [257 P.2d 474]; *People* v. *Schunke* (1951) 102 Cal.App.2d 875, 877 [228 P.2d 620]; Witkin, Cal. Criminal Procedure (1963) Habeas Corpus and other Extraordinary Writs, § 828, p. 792.)

Unless we elect to treat Ojeda's cross-appeal as a new petition for habeas corpus, it must be dismissed. Because of our decision to remand the case for further proceedings, we decline to treat this as a petition for habeas

corpus. The cross-appeal is dismissed. Ojeda is not foreclosed from pre-senting a new habeas corpus petition wherein this issue can be fully presented to the trial court.[1]

### III

We first address Ojeda's contention that enactment of the determinate sentencing law (DSL) in 1977, requires reexamination of the holdings in *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756] and *In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713].[2]

To accept Ojeda's argument would be to create a right not contem-plated by the Legislature. Presumptively, the Legislature was aware of *Love* when it enacted the DSL. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) Both *Gagnon* and *Love* acknowledge parole revocation proceedings are to be handled in the sound discretion of the Board of Prison Terms. There is no absolute constitutional right to counsel in parole revocation proceedings and the right to counsel is conditional to be determined on a case-by-case basis. (*In re Love, supra,* 11 Cal.3d 179, 189.)

No specific provision was made by the Legislature for right to counsel at a parole revocation hearing. In fact, in enacting Penal Code section 3041.5, the Legislature restricted the right to counsel at all hearings for purposes of reviewing a prisoner's parole suitability, or the setting, postponing or rescinding of parole dates. Section 3041.5, subdivision (a)(3) provides: "Unless legal counsel is required by some other provision of law, a person designated by the Department of Corrections shall be present to insure that all facts relevant to the decision be presented, including, if necessary, contradictory assertions as to matters of fact that have not been resolved by departmental or other procedures."

One such "provision of law" is section 3041.7 which provides a life prisoner with a right to counsel at any hearing to set, postpone or rescind a parole release date.[3] The Legislature was therefore mindful of this issue. It nevertheless elected not to require counsel at all parole revocation hearings

---

[1]Ojeda failed to make an adequate record below regarding his parole release date. The only record presented indicates a release date of February 7, 1987. Based upon the record before it, the trial court correctly denied Ojeda's motion to be released forthwith.

[2]This issue was not argued orally at the habeas corpus hearing and the trial court did not express an opinion.

[3]See *In re DeMond* (1985) 165 Cal.App.3d 932 [211 Cal.Rptr. 680] for a discussion of the effect of the DSL upon an Indeterminate Sentencing Law life prisoner at a hearing to set his parole release date.

and to leave the law as stated in *Gagnon* and *Love*. There was no absolute right to counsel prior to 1977 and we find no intent by the Legislature to create one by its enactment of the DSL.

## IV

The trial court stated: "This court is of the opinion wherever there is any doubt as to whether or not a defendant wants an attorney or needs an attorney that he should be given an attorney where he is being denied his liberty by a finding as in this case. In other words, I think the better position for the Board of Prison Terms would be to show affirmatively that they offered him an attorney and he is denied it the same as we must do here in a court of law because we take away that right."

The court did not conduct the necessary review of the Board of Prison Terms' exercise of discretion.[4]

The United States Supreme Court in *Gagnon* recognized the safeguards established in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] *may in some instances* require the probationer/parolee be assisted by counsel.

The court stated ". . . the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have

[4]The Board of Prison Terms apparently considered the *Gagnon-Love* criteria prior to denying Ojeda's request for counsel. It found: (1) there were no aggravating circumstances; (2) Ojeda had the ability to represent himself based upon his good command of the English language, being raised in Santa Ana and evidencing no mental problem; and (3) the case was a simple one.

Whether or not we agree with the conclusion reached in *Gagnon* and *Love* is not material to determination of this appeal—we are bound by their holdings. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) However, this court questions the vitality for distinction between probation and parole revocation proceedings. In *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313] as well as in *In re Love, supra,* 11 Cal.3d at page 186, the court acknowledged there is no material distinction between probation and parole revocation. The *Vickers* court held the right to counsel exists in probation revocation cases as a judicially declared rule of procedure. The conclusion a distinction must be made between probation and parole due to the judicial versus executive function is dubious at best. Such a distinction is irrelevant in a discussion of procedural due process. We are talking about "fundamental fairness—the touchstone of due process . . . ." (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 790 [36 L.Ed.2d 656, 666, 93 S.Ct. 1756].) If it is assumed the presence of counsel at the parole revocation hearing is for the purpose of giving aid/assistance to the parolee who lacks poise and the skill to present his or her case effectively, the court's reasons for denying the right to counsel are irrelevant to the issue of due process.

difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence. [¶] By the same token, we think that *the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. . . .*" (*Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 786-787 [36 L.Ed.2d 656, 664, 93 S.Ct. 1756], italics added.)

The court concluded: "We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." (*Id.,* at p. 790 [36 L.Ed.2d at p. 666].) "Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself." (*Id.,* at pp. 790-791 [36 L.Ed.2d at p. 666].)

Prior to *Gagnon,* a California parolee did not have a right to be represented by counsel at a revocation hearing. (*In re Tucker* (1971) 5 Cal.3d 171 [95 Cal.Rptr. 761, 486 P.2d 657].) The California Supreme Court in 1974 in *In re Love* adopted *Gagnon.* The right to counsel at parole revocation hearings (proceedings) exists under the *Love* holding when an effective presentation of the defense to the alleged violation "'depend[s] on the use of skills which the . . . parolee is unlikely to possess . . . .'" (*In re Love, supra,* 11 Cal.3d at p. 186.)

Both *Gagnon* and *Love* acknowledged the resolution of the right-to-counsel question in a particular case is left to the discretion of the parole authority. The court in *Love* identified a limited number of situations in which the right to counsel would arise presumptively: (1) where the parolee denies he committed the violations; (2) where he admits the violation but asserts complex matters in mitigation; and (3) where he admits the violation

but asserts the admission was coerced. (*In re Love, supra,* 11 Cal.3d at p. 186.)[5]

Here, the trial court acknowledged the existence of *Gagnon* and *Love,* but disregarded their direction.[6] Just as in *Gagnon,* we must reverse the lower court's decision and remand the matter for factual determinations at a habeas corpus hearing applying the criteria of *Gagnon* and *Love.* The trial court can then reexamine the Board of Prison Terms' refusal to provide counsel at the revocation proceedings and decide whether or not that determination violates *Gagnon* and/or *Love.*

The June 27, 1985, order granting the writ of habeas corpus is reversed. Ojeda's cross-appeal is dismissed and the order denying Ojeda's writ of habeas corpus is affirmed.

Crosby, Acting P. J., and Wallin, J., concurred.

---

[5]The court in *Gee* v. *Brown* (1975) 14 Cal.3d 571, 574-576 [122 Cal.Rptr. 231, 536 P.2d 1017] stated the criteria giving rise to a "presumptive right to counsel" to be: (1) denial of allegation; (2) complex matters in litigation; (3) intelligence/education levels of parolee.

[6]While it appears the Board of Prison Terms made an adequate record, it does not appear the trial court availed itself of it. A tape recording was available which may have answered the concerns expressed by the trial court. In addition, special forms have been created specifically for the issue of counsel at parole revocation proceedings. These forms, attached to the original petition, would also provide the trial court with information to be considered in resolution of the issue before it. In addition, the court is free to take testimony and receive whatever other admissible evidence either side desires to produce on the issue.